UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

GINA LATHAN,                          )
                                      )
              Plaintiff,              )
                                      )
v.                                    )          21-cv-3031-DJQ
                                      )
STATE OF ILLINOIS DEPARTMENT          )
OF PUBLIC HEALTH,                     )
                                      )
              Defendant.              )

## OPINION

Before the Court is Defendant State of Illinois Department of Public Health's ("IDPH") Motion for Summary Judgment. (Doc. 48).

Plaintiff Gina Lathan ("Lathan") alleges racial discrimination but concedes that the non-renewal of her contract and retaliation claims fail as a matter of law. Thus, the only issues before the Court are whether Lathan has sufficient evidence that would permit a reasonable factfinder to conclude: (1) she suffered an adverse employment action because of her race or (2) she was subjected to a hostile work environment because of her race. The Court concludes no reasonable jury could find either. Therefore, IDHP's Motion for Summary Judgment (Doc. 48) is GRANTED.

## I. BACKGROUND

  A.  Facts

On February 1, 2017, Lathan, who is African-American/Black, was hired to a four-year term as IDPH's Immunization Section Chief, in the Division of Infectious Disease.

The Division of Infectious Disease was part of the Office of Health Protection. Lathan held the position until January of 2021 when her contract expired. Except from when she started in 2017 until August of 2018 and again from January to March of 2020, Lathan was directly supervised by Heidi Clark, who was Chief of the Division of Infectious Disease. Besides Lathan, Clark supervised three other Section Chiefs: Eduardo Alvarez, Danny Brinkshavana, and Judy Kauerauf, none of whom are African-American/Black.

From February 6, 2017, until May 31, 2020, Molly Lamb was the Deputy Director of the Office of Health Protection. Lamb interviewed Lathan for her position. When the position of Chief of the Division of Infectious Disease was vacant, or when Clark was on prolonged leave, Lamb directly supervised Lathan. Lathan asserts that Lamb was the primary person who harassed her because of her race. Lathan alleges the racial discrimination and harassment occurred between 2017 and February 4, 2020.

B.  Allegations

Lathan alleges she was subjected to a hostile work environment and to different terms and conditions of employment as compared to her white colleagues. (Doc. 54, pp. 19–21; 24). Her primary assertion is she was given unequal job assignments because of her race and others similarly situated were treated better. Specifically, she alleges nine incidents: (1) being assigned to complete a Court of Claims backlog that had been ignored by two white colleagues. Because Lathan did not timely complete the backlog, she was counseled; (2) Immunization Section grant funds being misdirected and given to the Communicable Disease Section; (3) one of her subordinate employees, Melissa Turley, refusing to complete her duties on an audit, and Lamb not allowing Lathan to discipline

2

Turley but instead assigning the audit duties to Lathan; (4) Lamb requiring Lathan, during work hours, to assist Lamb completing unrelated school assignments; (5) Lamb placing a memo in Lathan's "supervisory file" falsely accusing Lathan of not using the grant management process properly and then not allowing Lathan to challenge it; (6) forcing Lathan to move her staff to a location with inadequate space which resulted in the Section not being able to hire additional staff because of the lack of space; (7) Lathan having to utilize inmates to move her Section to a new location, whereas other Section managers were allowed to use professional movers; (8) being forced to work at a warehouse to inventory and dispose or transfer items when other Section heads were not required to do this type of physical labor; and (9) being omitted from a scheduled meeting to discuss grant submissions for her Section when at least one other Section Chief, Judy Kauerauf, was invited to the meeting. (Doc. 54, pp. 19–21).

C.  IDPH's Response

IDPH asserts that many of the alleged incidents either did not occur, are otherwise explainable, or are otherwise immaterial. Primarily, IDPH asserts that none of the nine alleged incidents altered the terms or conditions of Lathan's employment and that there is no evidence that any of the alleged acts or omissions were directed towards Lathan because of her race. It also argues that the incidents, considered together, could not have created a hostile work environment as a matter of law.

**II.  LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

### III. ANALYSIS

Because retaliation and not having her contract renewed have been conceded, the remaining issues are whether Lathan suffered an adverse employment action because of her race or was subjected to a hostile work environment because of her race. The Court will first address adverse employment actions because of her race. Lathan argues that summary judgment is inappropriate both pursuant to the holistic approach and the *McDonnell Douglas* analysis.

Under the holistic analysis, courts must evaluate the evidence as a whole. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2019). The test is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. *See also Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004 (7th

4

Cir. 2020) ("What matters is whether she presented enough evidence to allow the jury to find in her favor.").

Under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802– 03 (1973), to make a prima facie case of race discrimination, Lathan must show that she (1) belongs to a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees outside of her protected class. *Igasaki v. Illinois Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). Most plaintiffs find meeting "the prima facie burden is 'not onerous.'" *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1545 (2025) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The Supreme Court has repeatedly explained that the "precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 1546 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)).

If Lathan successfully makes her prima facie showing, the "burden shifts to [IDPH] to articulate a legitimate reason for the adverse action." *Partin v. Baptist Healthcare Sys., Inc.*, 135 F.4th 549, 559 (7th Cir. 2025) (quoting *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 470 (8th Cir. 2016)). This is also a light burden. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If IDPH articulates a "legitimate, nondiscriminatory reason for its decision, the presumption of discrimination falls away." *Id.* At that point, the burden "shifts back to [Lathan] to show that the employer's stated reason was a pretext." *Igasaki*, 988 F.3d at 957 (citation omitted).

As recently clarified; to make out a Title VII discrimination claim, a plaintiff must show some harm respecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–355 (2024). A plaintiff alleging discrimination need not show that an employer's action was "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id*. at 355. *See also Thomas v. JBS Green Bay, Inc.,* 120 F.4th 1335, 1337 (7th Cir. 2024) ("Decisions requiring allegations of 'significant' or 'material' injury did not survive *Muldrow*."). A plaintiff need only allege some disadvantageous harm "respecting an identifiable term or condition of employment," which leaves the plaintiff "worse off" but not "significantly so." *Muldrow*, 601 U.S. at 355, 359. The "'terms [or] conditions' phrase . . . is not used in the narrow contractual sense" and that "it covers more than the economic or tangible." *Id*. at 354 (citations and quotation marks omitted). A term or condition of employment includes the "what, where, and when" of an employee's work. *Id*.

The Seventh Circuit's recent opinion in *Arnold v. United Airlines, Inc.*, 142 F.4th 460 (7th Cir. 2025) clarifies the *Muldrow* standard regarding adverse employment actions. Specifically, *Arnold* explains that "the harm need not be 'material' or 'significant'" but it "must affect the 'terms or conditions of employment.'" *Id*. at 470 (quoting *Muldrow*, 601 U.S. at 355, 353 n. 1). In *Arnold*, no adverse employment action occurred when the employee's "compensation, benefits, vacation times, and working hours were not affected." *Id*. at 471. Thus, the key is whether the complained of action affected a term or condition of employment.

Because adverse employment action, as modified by *Muldrow*, is the third prong of the *McDonnell Douglas* analysis, the Court will start with *McDonnell Douglas* but it applies equally to the holistic approach. There is no dispute that Lathan satisfies the first *McDonnell Douglas* prong. As an African-American woman, Lathan belongs to a protected class. The Court also finds the second prong satisfied. Lathan was "qualified" for the position as Immunization Section Chief in the Division of Infectious Disease and completed her contract. What is less clear is whether Lathan proffers enough evidence to make a prima facie showing under prongs 3 and 4 of *McDonnell*.

A.  The Third Prong, Adverse Employment Actions

As previously stated, Lathan sets forth nine incidents to support her argument that she suffered an adverse employment action because of her race. As explained by *Arnold*, 142 F.4th 460, what matters post *Muldrow*, 601 U.S. at 354–55, is whether the complained of action affected a term or condition of employment.

1.  Court of Claims Backlog

Lathan submits that she was required to complete a Court of Claims backlog that had been ignored by two white employees, Melissa Turley and Mattias Ghelaidos. She also argues she received "counseling" for not completing the Court of Claims backlog despite the other two employees not being disciplined for failing to perform the same work. (Doc. 54, p. 20; Doc. 48-7, p. 21). Lathan, however, admits that counseling is "not a form of discipline at IDPH like a written reprimand or suspension; rather, it is an opportunity to discuss with a supervisor how improvements can be made." (Doc. 54, at ¶ 31).

Counseling does not affect the terms or conditions of employment under the standard set forth in *Muldrow. See Arnold*, 142 F.4th at 471 (finding no adverse action when the employee's "compensation, benefits, vacation times, and working hours were not affected"). *See Phillips v Baxter*, 2024 WL 1795859 at *3 (7th Cir. Apr. 25, 2024) (no adverse action where there is no evidence that employee was left "'worse off' with respect to the terms and conditions of his employment") (quoting *Muldrow*, 601 U.S. at 359); *McNeal v. City of Blue Ash*, 117 F.4th 887, 903 (6th Cir. 2024) ("[o]nly discipline causing 'some harm respecting an identifiable term or condition of employment' is actionable on its own.") (quoting *Muldrow*, 601 U.S. at 355). The court in *McNeal* held that disciplinary measures of counseling and reprimands were not actionable themselves. *Id.; see also Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment.").

As will be discussed more fully below, Turley and Ghelaidos also held very different positions than the one held by Lathan and had different supervisors. Turley was Lathan's subordinate and Ghelaidos was the Court of Claims Coordinator. Lathan does not allege that other Section Chiefs did not have to work on the Court of Claims backlog. (Doc. 54, p. 20). Having to work on the Court of Claims backlog was not an adverse employment action.

### 2. Grant Funds

Lathan argues that Immunization Disease Section grant funds were misdirected and given to the Communicable Disease Section. The Communicable Disease Section was headed by Judy Kauerauf, a White/Caucasian employee. IDPH responds by asserting the record does not support the claim grant funds were misdirected. The Court agrees that Lathan has failed to develop the argument and that it is conclusionary. Lathan states that grant funds were used by Lamb to pay a full-time position in the Communicable Disease Section and did not fill a full-time position in the Immunization Section. But she does not state what position, whether it violated the terms of the grant, or anything more. Accordingly, the Court finds that any misdirection of grant funds, even if true, was not an adverse employment action directed at Lathan.

### 3.  Not Being Allowed to Discipline Turley

Lathan alleges that Turley refused to complete her duties on an audit and that Lamb would not allow Lathan to discipline Turley but instead required Lathan to complete the audit. Again, Lathan does not develop her argument. It is not clear from the record that either Lamb or Lathan had the power to formally discipline a subordinate. In Lamb's deposition, although not entirely clear, she indicates that Human Resources and the IDPH Chief of Staff were the two entities with ultimate disciplinary authority. (Doc. 48-3, p. 24).  Regardless, because Turley was Lathan's subordinate, overall responsibility for the audit was part of Lathan's duties and did not affect the terms or conditions of employment. *Arnold*, 142 F.4th at 471 ("[E]ven where there were changes in the employee's duties, those changes were within the scope of [the employee's] role and were 'mostly temporary inconveniences.'" (quoting *Phillips*, 2024 WL 1795859 at *3).

4.   Lamb's Course Work

Lathan asserts that she was required to do Lamb's homework while they were working. Lathan references (Doc. 38-7 at 23) but probably means (Doc. 48-7, at 23). Document 48-7 is her answers to interrogatories and in relevant part it states:

> Molly Lamb had Gina Lathan use work time to assist her in completing her homework assignments. Molly had Gina Lathan assist with completing her school assignments, call and email her fellow students to obtain information using their school and personal email addresses. (Document L)
> Treated differently under similar circumstances - No one should be forced to do their supervisor's homework according to CMS rules.

(Doc. 48-7, p. 23).

IDPH maintains that the underlying support, Exhibit L to the Complaint, (Doc. 1-1, p. 29), actually contradicts the assertion because it is an email that is work related. (Doc. 56, p. 5). Again, what Lathan fails to provide is the when, what, and how often. Although close because it is undeveloped, the Court finds that having to do Lamb's homework while on duty is an adverse employment action.

5.   False Memo

Lathan argues that Lamb "placed a memo falsely accusing Lathan of not using the grants management process properly" and alleges she was not able to challenge this determination. (Doc. 54, p. 20). In support, Lathan claims that she had a meeting about the memo with Lamb and the Chief of Staff.  (Doc. 48–7, p. 23). According to IDPH, "Plaintiff has no evidence that the memo written by Lamb is false, and her speculative and conclusory statements are insufficient to withstand summary judgment." (Doc. 56,

p. 6). The Court agrees with IDPH. Moreover, Lathan presents no evidence that the memo, false or true, affected a term or condition of her employment.

6. Work Space

Lathan asserts she was excluded from physical planning and forced to move her staff to a location with inadequate space that ultimately prevented the Section from hiring more staff. (Doc. 54, p. 20–21). IDPH argues that Lathan's complaints regarding workspace and exclusion from physical planning are not "identifiable" conditions of her work and therefore not adverse actions. (Doc. 48, p. 19). It also maintains Plaintiff's allegations are wholly conclusionary and lack any specifics. The Court agrees and finds this allegation did not affect the terms and condition of her employment. *Blumenshine v. Bloomington School District No. 87*, 2025 WL 2490599 at *4 (7th Cir. Aug. 29, 2025) (speculative and conclusory contentions alone are insufficient to move claims past summary judgment and may not be used to manufacture a genuine dispute of material fact.) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001).

7. Inmates to Move Her Section

Lathan asserts that she had to use inmates to move her Section while other Sections were allowed to use professional movers. IDPH responds that the assertion is not supported by the record and is conclusionary. The Court finds that at best it was a "temporary inconvenience" and did not alter the terms and conditions of her employment. *Arnold*, 142 F.4th at 471.

8. Warehouse

Lathan alleges she was directed to work at a warehouse to dispose or transfer

items and her colleagues were not required to do this type of physical labor. (Doc. 54, p.

21). IDPH responds that the allegation is conclusionary. Lathan also admits that

"[t]he warehouse was primarily medications/immunizations and record documents for

the Immunization Section, and the funds used to pay for the warehouse came from the

Immunization Section's budget." (Doc. 54, at ¶ 41). IDPH also argues that the man who

previously worked at the warehouse was Lathan's subordinate and had recently retired.

(Doc. 48-14, p. 1). What is completely lacking are specifics as to how long Lathan was

required to work in the warehouse. What she specifically claims is that "Molly Lamb

instructed Gina Lathan to work at the Warehouse and inventory all of the Immunization,

HIV/AIDS, Communicable Disease and STD Sections and provide all of the Section

Chiefs with updates on their inventory and facilitate disposal or transfer to a new location

while also conducting other work responsibilities." (Doc. 48-7, p. 24). In other words, she

was required to conduct an inventory of a warehouse that was primarily used by her

Section.

The Court finds that Lathan having to conduct the inventory was a "temporary

inconvenience" within the scope of her duties and did not alter the terms and conditions

of her employment. *Arnold*, 142 F.4th at 471.

9. Not Being Invited to a Meeting

Lathan argues that a meeting was scheduled to discuss grant submission for her

Section and she was not invited but another Section Chief, Judy Kauerauf was invited.

(Doc. 54, p. 21). In response, IDPH cites *Williams v. Memphis Light, Gas & Water*, 2024 WL

3427171 (6th Cir. 2024) for the proposition that being excluded from meetings is not

adverse employment action. (Doc. 56, p. 9). *Williams*, however, seemingly distinguishes meetings that are "not related to [an employee's] role" from meetings that are related to their role. *Id.* at \*5. Here, viewed in a light most favorable to Lathan, the meeting did relate to her duties. (Doc. 54, p. 4–5). However, IDPH also argues, (Doc. 56, p. 8), that Plaintiff cannot even provide a date when the meeting allegedly occurred and that according to the record, Lathan was actually assigned to write the grant application for her Section. (Doc. 48-7, p. 25). The Court finds that not being invited to one meeting, given all the facts and context, did not affect a term or condition of her employment.

B.  The Fourth Prong

Although the Court could stop with the *McDonnell Douglas* analysis because the only adverse employment action, having to do Lamb's homework, does not involve an allegation that a comparable person was treated differently, the Court will continue with the analysis in the alternative. The fourth prong of the *McDonnell Douglas* framework requires Lathan to make a prima facie showing that similarly situated individuals outside of the protected class were treated more favorably than Lathan. "It was incumbent upon [the plaintiff] to demonstrate that other similarly situated employees who were not members of the protected class were treated more favorably." *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 732 (7th Cir. 2004).

"The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors. All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). The purpose of the

13

similarly situated inquiry is to eliminate other possible explanatory variables, and to ultimately "isolate the critical independent variable—discriminatory animus." *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 812 (7th Cir. 2025) quoting *Smith v. City of Janesville*, 40 F.4th 816, 823 (7th Cir. 2022) (citation modified).

A valid comparison normally entails a showing that the comparators "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct of the employer's treatment of them." *Arnold*, 142 F.4th at 472 (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007)). But these factors are not always controlling. *Id*. "[D]ifferent titles and duties do not necessarily defeat and do not always preclude a finding that the employees are similarly situated." *Id*. But when there is a dispute over job responsibilities, "significant differences in job functions would preclude a 'meaningful comparison' when attempting to ascertain whether intentional discrimination was at play." *Id*. (quoting *Coleman*, 667 F.3d at 846) (internal quotation omitted). Whether a comparator is similarly situated is "typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Igasaki*, 988 F.3d at 958.

Lathan identifies as comparators the other Section Chiefs, Eduardo Alvarez (HIV Section Chief), Danny Brinkshavana (STD Section Chief), Judy Kauerauf (Communicable Disease Section Chief); as well as non-Section Chiefs Melissa Turley and Mattias Ghelaidos. (Docs. 48, 54 at ¶ 26).

14

1.   Non-Section Chiefs are not Valid Comparators

Lathan argues that Turley and Ghelaidos were treated differently because they never completed the Court of Claims report and were not disciplined for it. (Doc. 54, p. 20; Doc. 48-7, p. 21). There is, however, a significant difference in the job functions of Section Chief Lathan and Court of Claims administrator Ghelaidos. Additionally, Ghelaidos was not supervised by Clark or Lamb, nor was he in Lathan's department. (Docs. 48, 54 at ¶ 30). Turley was Lathan's subordinate and thus is not a comparator. (Doc. 54, p. 3–4). *See Coleman*, 667 F.3d at 849.

2.   Section Chiefs Are Valid Comparators

Conversely, a reasonable jury could find that Lathan's fellow Section Chiefs are valid comparators. The other Section Chiefs were all directly supervised by Clark, with Lamb being the Deputy Director. IDPH argues that Lathan does not present evidence that other Section Chiefs were treated more favorably than she was. (Doc. 48, p. 21). Lathan argues that she "was given a heavier workload than her colleagues." (Doc. 54, p. 24). For support, Lathan submits the nine incidents discussed above. The Court finds that it is doubtful Lathan has enough evidence that there was a difference in treatment in the context of the nine alleged incidents. However, because it is helpful to complete the analysis, the Court will proceed to the next *McDonnell Douglas* step.

C.  IDPH's Non-Discriminatory Reasons

As discussed above, IDPH asserts non-discriminatory reasons for all of the nine incidents Lathan maintains supports discrimination except for the homework allegation,

which it claims did not occur. Thus, IDPH satisfies their "light burden" and the burden shift back to Lathan to show pretext. *See Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010).

D. Lathan Fails to Demonstrate Pretext

A pretext is "a lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment." *Napier v. Orchard School Foundation*, 137 F.4th 884, 892 (7th Cir. 2025) (citation modified). "Pretext requires more than showing that the decision was mistaken, ill-considered or foolish, and so long as the employer honestly believes those reasons, pretext has not been shown." *Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016). In determining whether an employer's explanation is honest, courts look to the reasonableness, not the accuracy, of the explanation. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 492 (7th Cir. 2008); *see also Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

"To establish pretext, an employee must ultimately show by a preponderance of the evidence either (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence." *Arnold*, 142 F.4th at 473 (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992)).

Lathan admits "there are no disparaging statements." (Doc. 54, p. 25). She asserts, however, that she has outlined enough facts that, if believed by a jury, would demonstrate that her non-black colleagues were treated more favorably." *Id*. The Court disagrees. Other than citing case law about pretext, Lathan does not connect the law to

16

the facts of this case. She presents nothing to cast doubt on the proffered reasons. *See Tyburski v. City of Chicago*, 964 F.3d 590, 599 (7th Cir. 2020) ("[A]ssuming [plaintiff] could establish a prima facie case, his claim still failed because he was unable to demonstrate pretext."); *see also Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024) ("A plaintiff 'must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law.'") (quoting *Tyburski*, 964 F.3d at 599). Even when making inferences in the light most favorable to Lathan, no reasonable jury could find that IDPH's proffered reasons were pretext for race discrimination.

The same goes to the allegation about Lathan having to help Lamb with schoolwork. Viewed in a light most favorable to Lathan, i.e. the incident occurred, it was clearly wrong and affected a term and condition of Lathan's employment. However, there is no evidence that Lamb asked for help because of Lathan's race. Even Lathan does not tie it to her race but instead submitted when answering interrogatories: "No one should be forced to do their supervisor's homework according to CMS rules." (Doc. 48-7, p. 23). Lathan simply does not have evidence that any of the alleged incidents occurred because of her race.

E.  *Ortiz's* Holistic Approach

Lathan also invokes the holistic approach set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2019). All the evidence "belongs in a single pile and must be evaluated as a whole" to determine discriminatory intent. *Id*. at 766. The Court finds

that when all the evidence is considered in a light most favorable to Lathan, a reasonable factfinder simply could not find that she suffered an adverse employment action because of her race.

F.   Hostile Work Environment

Lathan's remaining claim is that IDPH subjected her to a hostile work environment. To succeed on a hostile work environment claim, Lathan must prove that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her membership in a protected class; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Equal Emp. Opportunity Comm'n v. Vill. At Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024).

An employer violates Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). When determining whether the harassment was so severe or pervasive, the Seventh Circuit employs both an objective and a subjective test. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). The subjective beliefs of an employee are not sufficient alone to meet this standard. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011). "[T]he environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (quotations omitted).

Whether conduct is sufficiently severe or pervasive to support a hostile work environment claim requires the Court to examine the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014).

Lathan submits the same nine incidents discussed above, taken together, show she was subjected to a hostile work environment because of her race. (Doc. 54, p. 24). The Court disagrees and finds that when all of the evidence is viewed in the light most favorable to Lathan, no reasonable jury could find that Lathan was subject to a hostile work environment nor find that the environment that was created was because of her race. The conduct must be "sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). Lathan is very short on specifics as to when incidents occurred during the applicable February 1, 2017 to February 4, 2020 time frame. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726–727 (7th Cir. 2024) (explaining that plaintiff's failure to provide the time, dates, or places where African-Americans were treated more harshly were conclusionary and insufficient to survive summary judgment.).

IDPH attempts to place approximate dates to Plaintiff's allegations. (Doc. 56, pp. 14–15). The bottom line is that the alleged incidents are spread out but occurred over the three-year period. Thus, they were not overly frequent. Also, a reasonable person would

not find the conduct very offensive. Having to do things like inventory a warehouse and have inmates move furniture instead of professional movers in a state office, in a relative sense, is simply not very offensive. The conduct also was not personally threatening towards Lathan. Some of it, like being excluded from a meeting or having to help a supervisor with homework could be considered humiliating. The conduct, however, was not severe or pervasive and did not unreasonably interfere with Lathan's work performance. She was not disciplined, and she did not include in her EEOC charge that her contract was not renewed because of her race.

When all the evidence is considered in a light most favorable to Lathan, the Court finds a reasonable jury could not find Lathan was subjected to a hostile work environment. The Court further finds that even if there was sufficient evidence to find a hostile work environment was created, there is insufficient evidence for a jury to reasonably conclude that Lathan was subjected to the hostile work environment because of her race.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds:

1.    Lathan concedes her non-renewal of her contract and retaliation claims fail as a matter of law;

2.    Lathan being required to help with one of her supervisor's homework while on duty was the only adverse employment action Lathan suffered. However, no reasonable jury could not find that she was required to do the schoolwork because of her race;

20

3.   In the alternative, even if Lathan experienced additional adverse employment actions, no reasonable jury could find that the adverse employment actions were taken because of Lathan's race;

4.   No reasonable jury could find Lathan experienced a hostile work environment; and

5.   Even if a reasonable jury could find Lathan suffered a hostile work environment, it could not reasonably find the hostile work environment was because of Lathan's race.

WHEREFORE, IDPH's Motion for Summary Judgment, (Doc. 48), is GRANTED.

**ENTERED** this 8th day of September, 2025.

/s/ Douglas J. Quivey

DOUGLAS J. QUIVEY
UNITED STATES MAGISTRATE JUDGE

21